**CADENCE DESIGN SYSTEMS, INC.,**
**a Delaware corporation,**
**Plaintiff–Appellant,**

**v.**

**AVANT! CORPORATION, formerly Arcsys, Inc., a Delaware corporation; Gerald Hsu, an individual; Mitsuru Igusa, an individual; and Chih–Liang Cheng, an individual, Defendants–Appellees.**

**No. 97–15571.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 12, 1997.

Decided Sept. 23, 1997.

---

825

Jeffrey R. Chanin, Ragesh K. Tangri, Keker & Van Nest, San Francisco, CA, for plaintiff-appellant.

George A. Riley, O'Melveny & Myers, San Francisco, CA, for defendant-appellee Avant! Corporation.

Before: GOODWIN and THOMAS, Circuit Judges, PREGERSON,* District Judge.

PREGERSON, District Judge:

Cadence Design Systems, Inc. ("Cadence") brought suit against Avant! Corporation ("Avant!") (pronounced Ah VAN tee) for copyright infringement and misappropriation of trade secrets. Cadence appealed the district court's partial denial of its motion for preliminary injunction. Cadence asserts that the district court erred (1) by failing to enjoin Avant! from using copyrighted computer code after the district court found that Cadence was likely to succeed on the merits of its copyright claim and (2) by failing to enjoin Avant! from selling modified software products created to replace the infringing software products. For the following reasons, we reverse the district court's decision and remand.

### Background

Cadence and Avant! compete in the field of "place and route" software.[1] On December 6, 1995, Cadence sued Avant! for theft of its copyrighted and trade secret computer source code[2] and notified Avant! and the district court that it intended to file a motion for preliminary injunction.[3] Cadence asserts

---

* The Honorable Dean D. Pregerson, United States District Judge for the Central District of California, sitting by designation.

1. Place and route software is used to design integrated circuits, i.e., computer chips. The software is designed to place the thousands (sometimes, millions) of tiny transistors that comprise the chip and "route" (or, connect) the transistors to other transistors. The parties' software automates and optimizes the process of placing and routing the transistors.

2. Computer programs are written in specialized languages (e.g., PASCAL, COBOL) called source code. The source code, which humans can read, is then translated into a form that computers can "read." The computer readable form, which operates on a binary system, is called object code.

3. This was not Cadence and Avant!'s first dispute. In early 1994, Cadence drafted a complaint alleging, inter alia, trade secret misappropriation after its Vice President, Gerald Hsu, left

that Avant! incorporated wholesale portions of Cadence's copyrighted source code in Avant!'s ArcCell and ArcCell XO software products ("ArcCell products" or "ArcCell software"). The copied portions of Cadence's code allegedly came into Avant!'s possession by way of several employees who left Cadence to work for Avant!. Cadence also asserts that Avant! paid Cadence employees to provide valuable information about Cadence's software products.

After Cadence filed this action, Avant! undertook a "clean room" process where it attempted to remove the allegedly infringing portions of code. Avant! hired an independent expert to examine the portions of infringing source code identified by Cadence. The expert then created specifications based on the Cadence code from which Avant! could write original code to take the place of the infringing code. Finally, Avant!'s engineers, allegedly operating without access to the Cadence code (hence the term "clean room"), created new code to replace the copied code. Avant!'s modified software is called Aquarius.

Due to the highly technical issues involved in the case, several months passed before the district court, with the aid of an independent expert, granted in part and denied in part Cadence's motion for preliminary injunction. The district court made the following findings: (1) that Cadence had established that its source code was protected by copyright and by trade secret law; (2) that Avant! used some of Cadence's code in its ArcCell products, thereby infringing Cadence's copyright; and (3) that Cadence will likely prevail on its claim that Avant!'s clean room procedures were inadequate.

The district court enjoined Avant! from using certain source code, in part because Avant! no longer used the code in its software and thus an injunction would not harm Avant!. The district court declined to enjoin the use of other source code because Cadence failed to make a sufficient showing of success on the merits. Finally, the court declined to enjoin Avant!'s use of Cadence's

source code in Avant!'s ArcCell and Aquarius products. The court declined to enjoin the sale of the ArcCell and Aquarius products because it found that the balance of harm tilted in favor of Avant! and that money damages were an adequate remedy for any harm to Cadence.

Cadence argues on appeal that the district court abused its discretion by failing to enjoin the ArcCell and Aquarius products. Cadence asserts that the district court was obligated to enjoin the sale of the products once the court determined that Cadence was likely to succeed on the merits of its copyright claim.

### *Discussion*

I. *Standard of Review.*

■ A plaintiff seeking preliminary injunctive relief must demonstrate "either a likelihood of success on the merits and the possibility of irreparable injury[ ] or that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor." *Sega Enterprises Ltd. v. Accolade, Inc.,* 977 F.2d 1510, 1517 (9th Cir.1992).

■ A district court's preliminary injunction order will be reversed only if the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact. *See Triad Sys. Corp. v. Southeastern Express Co.,* 64 F.3d 1330, 1334 (9th Cir.1995); *Sega,* 977 F.2d at 1517.

II. *The District Court Erred by Failing to Enjoin Sale of Avant!'s ArcCell and ArcCell XO Products.*

A. *The District Court Erred by Finding that Avant! Had Rebutted the Presumption of Irreparable Injury.*

The district court recognized that a presumption of irreparable injury arises if the plaintiff is able to show a likelihood of success on the merits of its copyright infringement claim. The district court erred, howev-

---

Cadence to work for Avant!. The parties settled this matter in a June 6, 1994 settlement agreement. The agreement prohibited Hsu from working for Avant! until July 1994 and provided

for a mutual general release of any existing claims related to Hsu's employment by Avant!. The district court found that the release did not resolve the parties' 1995 federal court dispute.

er, by finding that Avant! had rebutted the presumption of irreparable injury.

1. *A copyright infringement defendant cannot rebut the presumption of irreparable harm by showing that money damages are adequate.*

■ Cadence asserts that the district court erred because "it is well settled that the availability of money damages does not rebut the presumption of irreparable harm in copyright cases." Cadence cites several appeals court decisions for support, including: *Triad,* 64 F.3d at 1335 (holding that the presumption of irreparable harm supported the district court's preliminary injunction order); *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.,* 886 F.2d 1173, 1174 (9th Cir. 1989) (same); *Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1254 (3d Cir.1983) (holding that the district court erred when it failed to consider the presumption of irreparable harm); and *Atari, Inc. v. North Am. Philips Consumer Elecs. Corp.,* 672 F.2d 607, 620–21 (7th Cir. 1982) (reversing the district court's finding of non-infringement and directing the district court to enter a preliminary injunction based upon the presumption of irreparable harm).

None of the decisions cited by Cadence directly hold that a defendant cannot rebut the presumption of irreparable harm by showing the adequacy of money damages. In *Triad* and *Johnson Controls,* for example, we addressed cases where the presumption supported the district court's grant of a preliminary injunction. However, implicit in our prior decisions, as well as those of other federal courts of appeals, is the rule that a defendant cannot, by asserting the adequacy of money damages, rebut the presumption of irreparable harm [4] that flows from a showing of likelihood of success on the merits of a copyright infringement claim.[5]

In *Triad,* the defendant argued that any damages that the plaintiff suffered as a result of the defendant's infringement were monetary damages from lost revenues, and thus since monetary damages are not usually considered irreparable harm, the defendant asserted that it should not have been enjoined. *Triad,* 64 F.3d at 1335. Affirming the district court's preliminary injunction order, we acknowledged the general validity of the defendant's contention, but held that "[i]n a copyright infringement action, however, the rules are somewhat different." In copyright infringement actions, there is a presumption of irreparable harm and thus the plaintiff "need only show a reasonable likelihood of success on its copyright infringement claim to support the district court's grant of the preliminary injunction." *Id.*

We rejected the defendant's argument that monetary damages were adequate as a matter of law—we did not review the district court's factual findings for clear error. The implication of this resolution is that the alleged availability of money damages is not a reason to deny injunctive relief. *See also Johnson Controls,* 886 F.2d at 1174 (holding that as a result of the presumption of irreparable harm, the plaintiff "need only show a reasonable likelihood of success on its copyright infringement claim to support the district court's grant of the preliminary injunction").

Commentator Nimmer supports this result. Nimmer writes that if a plaintiff establishes a likelihood of success on the merits of a copyright infringement claim, "it would seem erroneous to deny a preliminary injunction simply because actual damages can be precisely calculated...." 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.06[A], at 14–105 (1997); *see also American Direct Mktg., Inc. v. Azad Int'l, Inc.,* 783 F.Supp. 84, 96 (E.D.N.Y.1992) (noting that in the Second and Ninth Circuits, "a

---

**4.** In the Fifth Circuit there is no presumption of irreparable harm in copyright infringement cases, and thus in the Fifth Circuit, a copyright defendant can prevail by showing the adequacy of money damages. The Fifth Circuit is the only court of appeals that does not apply the presumption of irreparable harm. *See Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.,* 843 F.2d 600, 612 n. 12 (1st Cir.1988) (noting that

the Fifth Circuit is the only circuit that does not apply the presumption).

**5.** There are ways to rebut the presumption of irreparable harm other than by showing the adequacy of monetary relief. These means are discussed below.

finding of likelihood of success on the merits automatically triggers a preliminary injunction, and failure to issue one is reversible error if the validity of the copyright and existence of copying are not at issue"); *Concrete Mach. Co.*, 843 F.2d at 612 (discussing the presumption of irreparable harm and stating that "[t]here is ... no need actually to prove irreparable harm when seeking an injunction against copyright infringement").

2. *The district court erroneously permitted Avant! to rebut the presumption of irreparable harm.*

■ Here, Avant! argued in opposition to Cadence's preliminary injunction motion that Cadence could not establish irreparable harm because the harms alleged by Cadence (e.g., lost sales and an inability to reposition itself as a service-oriented company) either were not irreparable or were speculative.

From these facts, the district court concluded that Avant! had rebutted the presumption of irreparable injury. The district court's sole statement of its findings was: "Cadence's claim of lost sales of other products and services would seem to be quantifiable. Other claims of loss of reputation or position would appear to be somewhat speculative, particularly given Cadence's established position in the marketplace." *Cadence Design Sys., Inc. v. Avant!, Inc.*, No. C95–20828, at 10 (N.D.Cal. Mar. 19, 1997).

The district court's conclusion was erroneous. Avant! could not, and therefore did not, rebut the presumption of irreparable harm by presenting evidence that Cadence's damages "seem[ed] to be quantifiable."[6] Avant!'s argument, which the district court accepted, was no different than the argument made by the defendant in *Triad* and the argument that could be made in most cases of copyright infringement that involve a copyrighted commercial work.[7] If this argument were to prevail, the presumption of irreparable harm would have little meaning in commercial settings.[8]

Avant! did cite decisions where a copyright defendant rebutted the presumption of irreparable harm.[9] These decisions, however, are readily distinguishable. For example, some courts have found the presumption rebutted when the plaintiff's copyrighted item is no longer on the market—a factor not present in the case on appeal. *See, e.g., Marisa Christina, Inc. v. Bernard Chaus, Inc.*, 808 F.Supp. 356, 360 (S.D.N.Y.1992); *LucasArts Entertainment Co. v. Humongous Entertainment Co.*, 815 F.Supp. 332, 337 (N.D.Cal. 1993) (finding no likelihood of success but noting that even if the plaintiff had established a likelihood of success, the court would have denied a preliminary injunction because the plaintiff's product and the defendant's product did not compete).

---

6. In addition, although the ability to determine Cadence's damages is a factual question not at issue on this appeal, one wonders how Cadence could prove how many sales it lost because of the presence of Avant!'s infringing software. *See Budish v. Gordon*, 784 F.Supp. 1320, 1337 (N.D.Ohio 1992) (finding that if the defendant was not enjoined from selling infringing books, there would be no reasonable manner for the plaintiff to prove how many sales he lost due to the defendant's competing books).

7. For example, in *Atari*, the court applied the presumption of irreparable harm even though the plaintiff and the defendant were both corporations marketing video games and the loss was a loss of sales caused by competition from the defendant's infringing game. 672 F.2d at 620. The court even discussed the specific amount of money the plaintiff had invested to develop the game and specific sales figures, yet the court never suggested that the circumstances permitted the defendant to rebut the presumption of irreparable injury. *Id.*

8. We further note that if the defendant is using copyrighted material owned by the plaintiff and a court awards damages instead of enjoining such use, the court has, in essence, made the plaintiff an involuntary licensor of its copyrighted material. The defendant can then use the copyrighted material to compete with the plaintiff.

9. In addition to arguing that monetary damages suffice to rebut the presumption of irreparable harm, Avant! asserts that we can uphold the district court's decision to deny Cadence's motion for preliminary injunction because the district court never found that Cadence was likely to succeed on the merits of its copyright infringement claim. Avant! asserts that the district court found that Avant! copied some of Cadence's code, but that the district court did not necessarily find that Avant! copied *protected* portions of Cadence's code. Avant!'s argument is belied by a reading of the district court opinion, which found that Cadence had established a likelihood of success on its copyright infringement claim.

Some courts have held that undue delay by the plaintiff can rebut the presumption—but this is another factor not at issue in this appeal. *See, e.g., Richard Feiner & Co. v. Turner Entertainment Co.*, 98 F.3d 33, 35 (2d Cir.1996).

· One could also argue that the presumption is rebutted where the plaintiff has not been harmed, where any harm is *de minimis,* or where the defendant acted with innocent intent, relying on lack of copyright notice. *See* 4 Nimmer, *supra,* § 13.03[F][5], at 13–145; *cf. Belushi v. Woodward,* 598 F.Supp. 36, 37 (D.D.C.1984) (denying injunction where one photograph in the defendant's book infringed the plaintiff's copyright). Here, however, the district court did not base its decision on any of these possible findings.

Avant! engaged in an extensive discussion of our opinion in *Abend v. MCA, Inc.*, 863 F.2d 1465 (9th Cir.1988), *aff'd sub nom., Stewart v. Abend,* 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990), but that decision is also easily distinguished. In *Abend,* the author of several short stories owned the statutory copyrights for the works. The author assigned his right to make motion picture versions of one of the stories to a production company. The author also agreed to renew the copyright for the story and to assign the same motion picture rights to the company. The author died without renewing the copyright, and the right to renew passed to the author's trust, which renewed the copyright at the appropriate time. Because an assignee of renewal rights takes only an expectancy, and because the author died before the copyright was renewed, the defendants did not receive the renewal motion picture rights. Accordingly, the plaintiff (the author's trust's assignee) brought a copyright infringement suit against the defendants for distributing the motion picture during the renewal term.

We upheld the district court's decision to not preliminarily enjoin the defendant. We quoted *Nimmer on Copyright* for the proposition that " 'where great public injury would be worked by an injunction, the courts might … award damages or a continuing royalty instead of an injunction in such special circumstances.' " *Abend,* 863 F.2d at 1479 (al-

teration in original) (quoting 3 Melville B. Nimmer, *Nimmer on Copyright* § 14.06[B], at 14–56.2 (1988)). We found that special circumstances existed in *Abend* because: the defendant had done nothing improper but had simply lost the right to the short story on a "technicality" existing under the Copyright Act of 1909; an injunction would have prohibited the defendant from enjoying profits from its own creative efforts (i.e., creating the motion picture from the short story); and the public would be denied the opportunity to view a classic film. *Id.* at 1478–79.

*Abend* is distinguishable from the case on appeal. Here, Avant! deliberately copied Cadence's code. Avant! was not an innocent infringer that believed that it had purchased the right to use Cadence's copyrighted work. Moreover, the district court found that an injunction would not result in harm to the public. Finally, the district court made no finding that there were special circumstances militating against an injunction—it merely held that monetary damages rebutted the presumption of irreparable harm.

Accordingly, we reverse the district court's order. On remand, the district court shall issue an order enjoining sale of the ArcCell products.

**B.** *The District Court Erred by Giving Improper Emphasis to the Harm that an Injunction Would Cause Avant!.*

■ The district court committed further error by finding that the balance of hardships "tilt[ed] heavily in Avant!'s favor." Specifically, the district court found that the infringing software accounted for 60% of Avant!'s income and that a preliminary injunction would "seriously jeopardize Avant!'s ability to survive as a relatively new company which invested significant time and resources in the development of its products prior to the time that Cadence initiated its lawsuit." *Cadence Design Sys.,* at 10.

■ In this circuit, as well as in other circuits, a defendant who knowingly infringes another's copyright "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities." *Triad,* 64 F.3d at 1338. In *Triad,* we affirmed the district court's order enjoining the defendant from servicing certain of the

plaintiff's computers, rejecting the defendant's argument that the inability to service the plaintiff's computers would cause it to suffer extreme harm. We quoted *Concrete Mach. Co.*, 843 F.2d at 612, for the proposition that "[w]here the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense 'merits little equitable consideration [on an appeal from a preliminary injunction.]'" *Triad*, 64 F.3d at 1338 (alteration in original); *see also Universal City Studios, Inc. v. Sony Corp. of Am.*, 659 F.2d 963, 976 (9th Cir.1981) (noting that once the court has determined that there is infringement, "the continued profitability of appellees' business is of secondary concern"), *rev'd on other grounds*, 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984); *Apple Computer*, 714 F.2d at 1255 (reversing a district court order that considered the harm to a knowing infringer); *Atari*, 672 F.2d at 620 (finding that the balance of hardships did not weigh against entry of a preliminary injunction where the only alleged hardship to the defendant was the loss of profits from marketing the infringing work); *Helene Curtis Indus. v. Church & Dwight Co.*, 560 F.2d 1325, 1333 (7th Cir.1977) ("Advantages built upon a deliberately plagiarized make-up do not seem to us to give the borrower any standing to complain that his vested interests will be disturbed.") (internal quotation marks omitted); 4 Nimmer, *supra*, § 14.06[A] at 14–103 (noting that the balance of hardships factor is not usually invoked in copyright cases).

One might contend that the language used in the decisions cited above leaves room to argue that the balance of hardships should be considered if the defendant's original contribution is substantial, the infringing portion of the defendant's work is minimal, and any damages to the plaintiff are minor. Here, Avant! asserts that at most its software used only 5% of Cadence's copyrighted code. However, even if this fact could support the district court's decision to give greater weight to the balance of harm analysis than would otherwise be proper, the district court made no findings concerning the proportion of infringing and non-infringing material in Avant!'s software and did not draw any conclusions that relied on this fact.

Therefore, the balance of hardships issue cannot be accorded significant—if any—weight in determining whether a court should enter a preliminary injunction to prevent the use of infringing material in cases where, as here, the plaintiff has made a strong showing of likely success on the merits. The balance of hardships factor may assume significance in cases where the plaintiff has not established a strong likelihood of success on the merits, but here Cadence established that it was likely to succeed on the merits of its copyright claim. The district court appears to have been strongly influenced by the fact that an injunction would, be devastating to Avant!'s business, which we hold to be error warranting reversal of the district court's decision.

III. *The District Court Erred by Assuming that an Injunction Would be Improper Even if the Aquarius Software Infringed Cadence's Copyrighted Source Code.*

█ The district court concluded that Cadence was likely to prevail on its claim that Avant!'s clean room procedures were inadequate. *Cadence Design Sys.*, at 11. The district court did not state, however, whether its findings related to Cadence's copyright infringement claim or to Cadence's misappropriation of trade secrets claim.

Specifically, the court found that Avant!'s use of an independent expert to examine portions of code identified by Cadence as infringing and rewrite or delete any potentially infringing code in the Aquarius software "d[id] not appear to have been sufficient" because Avant! was able to take advantage of its knowledge of the functions and the basic structure of the Cadence code. *Id.* In addition, the district court noted that the use of Cadence's code to create specifications for Avant!'s engineers "rais[ed] serious questions." *Id.* The district court expressly made no finding as to whether the Aquarius software contained code copied from Cadence. The district court did not state whether any conduct occurring within the clean room process infringed Cadence's copyright (e.g., intermediate copying of the Cadence code during the process of creating the Aquarius code).

Ultimately, the district court concluded that there was insufficient evidence to enjoin the production or sale of the Aquarius software "to the extent that they contain essentially the same source codes as do Avant!'s prior products." *Id.* at 13.

The district court's conclusion was erroneous. If the Aquarius software infringes Cadence's copyright, the district court should have entered an order preliminarily enjoining Avant! from selling the software.

Cadence asserts on appeal that the district court should have preliminarily enjoined Avant!'s use of the replacement code "because Avant! violated Cadence's copyrights and misappropriated Cadence's trade secrets to create the replacement code." However, as stated above, there are no findings upon which we could base a conclusion that Avant! violated Cadence's copyright, and Cadence did not appeal the trade secret aspects of the district court's order. On remand, the district court will have to determine whether the Aquarius software infringes Cadence's code. If so, the district court shall enter an order enjoining the sale of the software.

***Reversed and Remanded.***