Jeremy ALVAREZ, Through his next friends Lynn and Jose ALVAREZ, Lynn Alvarez, and Jose Alvarez, Plaintiffs,

v.

FOUNTAINHEAD, INC., Ana Suan, Sarah Zimmerman, and Does 1 through 10, Defendants.

No. C 99–1202 MEJ.

United States District Court, N.D. California.

May 14, 1999.

**1050**

Ilene W. Diamond, Wesley E. Overson, Morrison & Foerster, LLP, San Francisco, CA, for plaintiffs.

Gregory L. McCoy, Gagen McCoy McMahon & Armstrong, Danville, CA, for defendants.

Ryan E. Warren, USDJ, Disability Rights Section, Civil Rights Division, Washington, DC, USA, Amicus Curiae.

## ORDER GRANTING, IN PART, PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

JAMES, United States Magistrate Judge.

Pending before this Court is Plaintiffs' Motion for a Preliminary Injunction, filed on April 7, 1999. On May 13, 1999, this matter was heard on the Court's calendar, at which time oral argument was presented by the parties' counsel and by Ryan E. Warren, trial attorney for the Civil Rights Division of the United States Department of Justice as amicus curiae in this case. After careful consideration of the written briefs, oral argument, and evidence submitted by the parties, and Good Cause Appearing, the Court grants, in part, Plaintiffs' Motion for a Preliminary Injunction.

### BACKGROUND

This action was filed by the parents of Jeremy Alvarez, a four-year old child with an asthma condition, on his behalf and on the basis of their own claims, against Fountainhead, Inc., the owner and operator of Fountainhead Montessori Schools, a private school program with branches in Orinda, Moraga, Danville, Pleasant Hill, and Dublin, California. Plaintiffs desired that Jeremy attend the Fountainhead Montessori preschool in Dublin. Jeremy's name was placed on a waiting list at the Dublin school, and in November of 1998, Fountainhead notified Jeremy's parents that a space would be available for him as of January 4, 1999. Plaintiffs allege that they were then informed that Fountainhead has a "no medications" policy that does not allow Jeremy to bring his hand-held Albuterol asthma inhaler to preschool. Plaintiffs contend that Fountainhead's failure to modify their "no medications" policy constitutes a violation of Title III of the ADA and state law.

On April 7, 1999, Plaintiffs filed the instant motion for a preliminary injunction, arguing that because of Fountainhead's "no medications" policy, Jeremy is currently losing the opportunity to attend preschool where he can learn and play with children his own age. Plaintiffs seek a preliminary injunction directing Fountainhead to: (1) rescind the "no medications" policy in every form at all five of its schools; (2) within one week, have its staff who will supervise Jeremy participate in a free training lasting less than one hour on asthma and the use of inhalers; and (3) allow Jeremy to enroll at Fountainhead with his inhaler from 9:00 am to 2:00 pm on Mondays, Tuesdays, and Fridays immediately after the training is completed.

### DISCUSSION

■ To obtain a preliminary injunction, Plaintiffs must demonstrate either: (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions of law are raised and the balance of hardships tips sharply in plaintiff's favor. *Cadence Design Sys. v. Avant! Corp.*, 125 F.3d 824, 826 (9th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 1795, 140 L.Ed.2d 936 (1998). These two standards form a sliding scale, in which the "critical element in determining the test to be applied is the

relative hardship to the parties." *Half Moon Bay Fishermans' Mktg. Ass'n. v. Carlucci*, 857 F.2d 505, 507 (9th Cir.1988). The Court also considers the public interest in ruling on a motion for preliminary injunction. *See Chalk v. United States Dist. Court Cent. Dist.*, 840 F.2d 701, 711 (9th Cir.1988).

## I. Possibility of Irreparable Injury

■ Plaintiffs contend that a preliminary injunction is necessary because by the time this action is decided on the merits, Jeremy will be old enough for kindergarten and will have lost his opportunity to attend preschool. At oral argument, Plaintiffs indicated that Jeremy will start kindergarten this Fall, leaving him with only a few more months in which to attend preschool. Plaintiffs argue that by refusing to accommodate Jeremy, Fountainhead is depriving Jeremy of the opportunity to get a head start on his education, and learn and play with other children his same age. In support of their motion, plaintiffs submit a report of the State Superintendent's Universal Task Force that outlines the social and academic benefits of preschool to three- and four-year olds such as Jeremy. (Plfs.' Ex. T to Overson Declaration). Plaintiffs further explain that it would be difficult, if not impossible, to place Jeremy in another preschool immediately, due to a number of factors, including the fact that many preschools have waiting lists for admission. Fountainhead does not appear to dispute that Jeremy will suffer irreparable injury if he cannot attend Fountainhead preschool. The Court finds that Plaintiffs have demonstrated the possibility that Jeremy faces an immediate and irreparable harm in being prevented from attending the Fountainhead preschool with his inhaler.

## II. Probability of Success on the Merits

Title III of the ADA prohibits a place of public accommodation from discriminating against an individual on the basis of disability. 42 U.S.C. § 12182(a). For purposes of Title III, "disability means with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 28 C.F.R. § 36.104. In the instant case, the parties agree that Plaintiff Jeremy Alvarez, who suffers from asthma, is a "person with a disability" and is entitled to the protections of Title III of the ADA. The parties further agree that the Fountainhead Montessori School is a "public accommodation" covered under Title III of the ADA, as the statute explicitly lists child care centers as covered public accommodations. 42 U.S.C. § 12181(7)(k).

Discrimination is defined under Title III to include a denial of the opportunity to participate in or benefit from a public accommodation's goods and services. 42 U.S.C. § 12182(b)(1)(A)(i). Title III requires a place of public accommodation to make reasonable modifications to its policies, practices, and procedures where necessary to ensure full and equal enjoyment of its services by individuals with disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii). However, the reasonable modifications requirement is subject to the following limitations: First, modifications are not required where they would "fundamentally alter" the nature of the public accommodation's goods and services. 42 U.S.C. § 12182(b)(2)(A)(ii). Second, modifications are not required if the entity can demonstrate that taking such steps would result in an undue burden. 42 U.S.C. § 12182(b)(2)(A)(iii). Significant difficulty or expense in making an accommodation constitutes an undue burden. 28 C.F.R. § 36.104. Third, modifications are not required if doing so would pose a "direct threat" to the health or safety of others. 42 U.S.C. § 12182(b)(3).

In the instant case, Plaintiffs seek the following modifications to the Fountainhead Montessori School's program: (1) that school's the "no medications" policy be rescinded in every form at all five of its schools; (2) within one week, have its staff who will supervise Jeremy participate in a

free training lasting less than one hour on asthma and the use of inhalers; and (3) allow Jeremy to enroll at Fountainhead with his inhaler from 9:00 am to 2:00 pm on Mondays, Tuesdays, and Fridays immediately after the training is completed. In opposition to Plaintiffs' motion, Defendants argue that providing these accommodations would fundamentally alter Fountainhead's educational program, would pose an undue burden to the school and its teachers, and would create a safety risk for Jeremy and the other children attending the school.

### A. Fundamental Alteration

██ With respect to the issue of fundamental alteration, Defendants describe Fountainhead's Montessori preschool program as one of individualized instruction, where each classroom has 23 to 24 children and two adult teachers. (Zimmerman and Suan Declarations). Defendants argue that because the teachers' attention may be focused on other children, there is no assurance that Jeremy could receive his medication immediately if he has an asthma attack. Fountainhead argues that to require one teacher to focus attention on Jeremy at all times would fundamentally alter the Montessori program's method of instruction.

The Court is not convinced at this time that requiring teachers to recognize symptoms of wheezing and supervising Jeremy's use of the inhaler would fundamentally alter the nature of Fountainhead's educational program. Plaintiffs have submitted the declarations of Drs. Wax and Denmead, Jeremy's own doctors, who indicate that Jeremy's asthma condition is stable and does not require inten-

sive care and monitoring. Therefore, contrary to Defendants contention, it appears that Jeremy may not require the continual focus of one teacher's attention. Moreover, as outlined in Plaintiffs' brief and further discussed in the amicus brief of the Department of Justice, Fountainhead's teachers are not being asked to engage in a function that is wholly different from those duties already being performed for other children. The declarations of several Fountainhead teachers submitted with Defendants' opposition papers demonstrate that as part of their daily duties, teachers routinely maintain custodial supervision over all children in the program, which includes tasks such as providing toilet assistance, changing diapers, changing clothes, and administering first-aid to children when they need it. (Declarations of Nanthakumar, Cooper, Stephanian, Sitt, Mehta, and Smiley). The Court also finds it significant that Fountainhead's Teacher Handbook instructs teachers to be aware of potential dangers to the childrens' health and safety, which appears to include the type of monitoring and supervision that Jeremy would require. (Excerpts from Fountainhead Handbook, at Attachment to Supplemental Declaration of Overson).[1] Finally, the Court takes note of the declaration of Jennifer Soenen, who teaches at a Montessori school in San Jose, who indicates that staff there have been trained to use a nebulizer, an asthma treatment device more complex than the Albuterol inhaler used by Jeremy, without any fundamental alteration to the educational program there. Based on all of these factors, it appears probable that requiring Fountainhead's teachers to recognize Jeremy's asthma symptoms and supervise Jeremy's

---

1. Defendants object to the introduction of the portions of the Fountainhead Handbook attached to Plaintiffs' May 6, 1999 declaration on the grounds that plaintiff's submission is untimely. (Defs.' Letters to Court, dated May 7 and 8, 1999). However, the Court does consider the Handbook because it appears that Plaintiffs' receipt of the Handbook from Defendants occurred on April 28, 1999, after

Plaintiff's reply brief was due. (Plfs.' Letter to the Court dated May 7, 1999). Because defendants appear to have been untimely in making their initial disclosures pursuant to Fed.R.Civ.P. 26, and because consideration of the Handbook is relevant to the Court's inquiry, the Court will consider it in ruling on the instant motion.

use of his Albuterol inhaler would not fundamentally alter Fountainhead's educational services.[2]

## B. Undue Burden

██ Defendants also argue that requiring Fountainhead's teachers to submit to training on the use of asthma inhalers would create an undue administrative and economic burden. Fountainhead argues that Plaintiffs have attempted to minimize the training requirements that would be imposed on the teachers. Defendants present the declarations of Drs. Callaway and Kishiyama, who declare that one hour of training may be insufficient to train day care staff on proper recognition of asthma attack symptoms and dispensation of prescription medication. Fountainhead also presents documentation from Cathleen McCoy, Chief Administrator of California Respiratory Care Board, which appears to suggest that training for a week, or perhaps more, would be necessary. Fountainhead argues that submitting its staff to such training would result in undue administrative and economic burden because it would require that teachers be absent from the classroom during the school year or take training on weekends.

As to the amount of training required, Plaintiffs submit the declarations of Jeremy's own doctors, Drs. Wax and Denmead, who support Jeremy's admission to Fountainhead after teachers attend a short training of less than one hour's duration. Dr. Wax's declaration outlines Jeremy's treatment: he uses an Azmacort inhaler twice daily at home, administered by his parents, and also uses an Albuterol inhaler as needed every 4–6 hours for wheezing and difficulty breathing. Dr. Wax further declares that Jeremy can use the inhaler by himself with adult supervision. As to the amount of training needed, Dr. Wax declares the following, at paragraph six:

It has been my experience in treating children with asthma and working with their families that most adults can be trained to recognize the symptoms of asthma and to supervise the child's use of an albuterol inhaler in a matter of minutes. In the interests of the child's safety, it is best that a young child of Jeremy's age with asthma be placed under the supervision of an adult with such training.

Concerning the amount of training needed for teachers to learn how to supervise Jeremy's use of the inhaler, Dr. Denmead declares the following:

5. As part of my practice, I routinely teach children and parents how to utilize the inhaler to manage asthma. The process usually takes just a few minutes.

6. As one of Jeremy's doctors, I am fully supportive of his attending preschool with his inhaler. Asthma is typically a manageable condition that should not prevent a child from learning and playing with other children. It should not require more than a few minutes of Jeremy's teachers' time to learn how to recognize the signs of when Jeremy may need to use his inhaler, and how to supervise his use of the inhaler, and it is important that Jeremy properly use his inhaler within the first few minutes of his experiencing difficulty breathing.

The Court finds the opinions of Jeremy's own doctors to be controlling, to the extent that Drs. Wax and Denmead have examined and treated Jeremy, and thus presumably are more familiar with his particular health needs than are Defendants' medical experts. Moreover, it seems highly unlikely that Jeremy's own doctors and parents would purposefully minimize the amount of training required, since to do so would obviously put Jeremy's health and safety at risk of harm. As to the provision of the training, Plaintiffs have submitted the declaration of Nicolette Philips–Brown,

---

**2.** The Court notes that the conclusions reached herein regarding the probable success on the merits of Plaintiff's ADA claim are limited to the instant motion for preliminary injunction and are not intended as factual or legal conclusions for any other purpose.

Senior Health Educator for the American Lung Association of the East Bay. Ms. Philips–Brown declares that she is presently available to schedule training for the teachers at Fountainhead school, at no cost to the school. Based on the evidence before the Court at this time, it appears that requiring Jeremy's teachers to submit to a one-hour training session on the use of the asthma inhaler is sufficient and would not pose an undue administrative burden on Fountainhead.

The Court also notes that, in connection with their undue burden argument, Defendants argue that Fountainhead and its teachers will be exposed to an undue threat of liability if Jeremy is injured in connection with the inhaler. At oral argument, the parties agreed that such concerns could be resolved if Jeremy's parents sign a release and waiver of any liability that may arise as a result of Fountainhead's staff administering the inhaler to Jeremy. During oral argument, the parties indicated that a .document similar to the waiver and release form in the settlement agreement reached in the *Cumberland Child Care* case would be acceptable to both Plaintiffs and Defendants. The *Cumberland* agreement releases the child care center and its officers, employees, and agents from all liability arising from administering asthma treatment, so long as the center's employees exercise reasonable care in taking such actions. The agreement also provides a release from all liability arising out of the use of any materials and/or equipment supplied by the parents or guardians in connection with the asthma treatment, so long as the employees exercise reasonable care in the use of the materials and equipment. In light of the parties' stated agreement to the inclusion of such a waiver in connection with Jeremy's use of the inhaler at the Fountainhead preschool, the Court finds that accommodating Jeremy would not pose an undue economic burden on Fountainhead or its employees.

## C. Direct Threat to Health and Safety of Others

██ Fountainhead argues that monitoring Jeremy for asthma symptoms and supervising his use of the inhaler would redirect teachers' attention away from other students in the preschool, posing a risk to their safety. Fountainhead also expresses concern that the mere presence of the inhaler would pose a risk of harm to other children who might want to play with it. It appears to the Court that storage and safekeeping of the inhaler could be easily solved by placing the inhaler in a secured location, such as a locked cabinet, well out of the reach of children, yet accessible to teachers in the event Jeremy had an asthma attack. If the inhaler is properly stored outside the reach of children and if Jeremy's use of the inhaler is supervised by teachers and then promptly returned to its storage place, the possibility of the inhaler creating a safety risk for other students in the preschool should be quite minimal.

## D. California Senate Bill 1663

██ Although it is not necessary to the Court's analysis of the merits of Plaintiffs' claim under Title III of the ADA, the Court finds it appropriate to address California Senate Bill 1663, codified at California Health and Safety Code § 1596.798, as it is addressed at length in the parties' moving papers. Subsection (a) of § 1596.798 provides that the staff of child day care centers may administer inhaled medication to a child, if certain conditions are met, such as compliance with written instructions from child's doctor, that staff shall record each time they administer medication, and the day care center obtain permission from parents.[3] Subsection (a)(4) requires all day care staff obtaining

---

**3.** The Court does not include an exhaustive list of all the requirements of § 1596.798, but merely lists a few for purposes of illustration.

or renewing pediatric first aid certificates after January 1, 2000 to complete formal training in administering inhaled medications to children with respiratory needs. Defendants argue that subsection (a)(4) means that Fountainhead can wait until its first aid certification renewal in October 2000 before requiring its staff to obtain asthma training. The Court rejects this argument, as the legislation appears to have been enacted to immediately eliminate a conflict between the ADA's mandate of reasonable accommodations and previous state law that prohibited day care providers from administering prescription medication. The fact that subsection (a)(4) has a "phase-in" provision making the training mandatory under state law only after January 1, 2000 does not delay Defendants' duty to comply with the reasonable modifications requirement of Title III of the ADA. Moreover, the Court finds that Health and Safety Code § 1596.798 supports Plaintiffs' case inasmuch as it signals the California Legislature's recognition that the presence of asthma inhalers in day care settings is reasonable.

### E. Public Policy Considerations

█ Based on all the factors discussed above, the Court concludes that Plaintiffs have shown a probable chance of success on the merits of their claim for reasonable modifications under Title III. In making this finding, the Court gives deference to the policy views expressed by the Department of Justice in its regulations, publications, and amicus brief. *Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (as the agency directed by Congress to issue implementing regulations to render technical assistance explaining the responsibilities of covered individuals and institutions and to enforce Title III, the views of the Department of Justice are entitled to deference), *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (courts should grant controlling weight to such interpretations unless they are arbitrary, capri-

cious, or manifestly contrary to statute); *see also Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994). The Department's amicus brief emphasizes that reasonable modifications under the ADA should be "simple and common sense" responses to individualized needs of persons with disabilities. (Amicus Brief, at 12). This principle is expressed in the Department of Justice publication *Commonly Asked Questions About Child CareCenters and the ADA* (1997), in which the Department takes the position that training child care staff to administer blood sugar level tests for diabetic children is a reasonable accommodation. (Plfs.' Ex. B to Overson Declaration). Moreover, as expressed in the Department's amicus brief, the Court is mindful of the public policy concern that educators not discriminate against families of children with disabilities, and instead allow such children to attend mainstream child care programs. (Amicus Brief, at 20).

█ Based on the arguments and evidence submitted at this time, the Court concludes that Plaintiffs have established both a probability of success on the merits and a possibility of irreparable injury to Jeremy if he is not immediately admitted to the Fountainhead Montessori preschool with his asthma inhaler. The Court further finds that the balance of hardships in this case tips decidedly in Plaintiffs' favor, as the hardship to Jeremy if he is not allowed to attend preschool with his inhaler is great, while the hardship to Fountainhead in obtaining training and supervising Jeremy in the use of the inhaler appears to be minimal. The Court therefore grants Plaintiff's motion for a preliminary injunction to the extent that it requests an order directing Fountainhead to have its staff participate in training on asthma and the use of inhalers and allow Jeremy to enroll at Fountainhead with his inhaler. However, the Court declines Plaintiffs' request for an order directing Fountainhead to rescind its "no medications" policy in every

form at all five of its schools, because the Court finds this to be overly broad at this juncture. The instant motion for a preliminary injunction concerns Jeremy Alvarez's need to attend preschool immediately, and Plaintiffs have established irreparable injury only as to Jeremy. Therefore, the Court's granting of the motion for a preliminary injunction is limited to Jeremy's immediate need for reasonable accommodations at the Fountainhead preschool.

### CONCLUSION

Accordingly, Plaintiffs' motion for a preliminary injunction is GRANTED IN PART, as follows:

(1) Defendants shall immediately arrange with Plaintiffs to have those staff members who will supervise Jeremy Alvarez at the Fountainhead preschool and day care participate in a training session of one hour or less on the nature of asthma and the supervision of children who require use of the Albuterol inhaler. This training shall be completed within seven (7) business days from the date of this Order. Defendants shall allow Plaintiffs to access Defendants' facilities at a reasonable and mutually convenient time so that representatives of the American Lung Association may provide such training at no cost to Defendants;

(2) Immediately following the required staff training, Defendants shall enroll and admit Jeremy Alvarez to Fountainhead's Dublin preschool and day care services, permitting him to bring his Albuterol asthma inhaler and have access to it when needed for asthma symptoms. Jeremy shall be placed in classes with children of his approximate age on Mondays, Tuesdays, and Fridays from the start of the school day until 2:00 p.m.;

(3)· Defendants shall arrange with Plaintiffs to provide asthma training on the use of the Albuterol inhaler for all other staff members (those who do not directly supervise Alvarez) within a reasonable time period that is mutually convenient to the parties;

(4) Pursuant to the parties' stipulation in open court, the parents of Jeremy Alvarez shall execute a release and waiver of any liability arising from staff members administering asthma treatment to Jeremy using the inhaler provided by Plaintiffs, so long as the Fountainhead and its employees exercise reasonable care in taking such actions, as described in Section II(B) of this Order. The release shall be executed within seven (7) business days from the date of this Order.

IT IS SO ORDERED.