G. RICORDI & CO. v. MASON et al.

(Circuit Court, S. D. New York. December 4, 1911.)

COPYRIGHTS (§ 60*)—INFRINGEMENT.

A booklet entitled "Opera Stories," by which the author sought to give a mere fragmentary and superficial idea of the plot and characters of various operas, each scene being covered by a single paragraph and taken from descriptions other than the operas themselves, was not an infringement of the copyrights on the librettos.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 56; Dec. Dig. § 60.*]

In Equity. Bill by G. Ricordi & Co. against Henry L. Mason and others. On motion for preliminary injunction. Denied.

See, also, 201 Fed. 184.

Nathan Burkan, of New York City, for complainant.

Edwards, Sager & Wooster, of New York City, and Browne & Woodworth, of Boston, Mass. (Alexander P. Browne, of Boston, Mass., of counsel), for defendant Mason.

COXE, Circuit Judge. The complainant, as the owner of copyrights in the operas "Germania" and "Iris," seeks to restrain the defendants from publishing a book called "Opera Stories" which, it asserts, is an infringement of its copyrights.

"Germania" covers 46 printed pages and is divided into three acts. The "story" of this opera as printed by the defendants covers a little more than half a page, each act being described in a paragraph containing about 100 words. The entire situation will be made plain by reproducing the defendants' statement of the first act:

"Act I—Prologue.

"Scene, a mill near Nuremburg. Students, disguised as millers, are plotting and writing pamphlets. The police arrive; but their coming has been heard of so that when they enter wheels are turning and all are busy. Still they make some arrests, among others, Carlo Worms. Frederico Loewe, his intimate friend, is gone to the wars and has entrusted to him the care of his affianced Ricke. Worms, forgetful of duty and friendship, falls passionately in love with Ricke who succumbs to his overtures. She upbraids him, however, and Frederico shortly returns."

"Iris" need not be discussed, as the legal questions presented are identical in each opera.

It will be observed that the quotation above given is neither an opera, nor, strictly speaking, the story of an opera. The reader gets a vague, fragmentary and superficial idea of the plot and of the characters. One reading it might acquire sufficient information to enable him to decide whether or not he wishes to attend the opera. If he were attracted by so commonplace a plot as that disclosed in the first act he would probably attend, otherwise he would remain at home. I am unable to perceive how such an indeterminate statement infringes the copyright of the opera. It does not use the author's language, it does not appropriate his ideas and it does not reproduce his characters. Indeed, it appears from the defendants' affidavits that the author of the "story" did not prepare it from the copyrighted opera

but from a description thereof found in a newspaper. It gives just enough information to put the reader upon inquiry, precisely as the syllabus of a law report, the review of a book or the description of a painting induces the reader to examine further.

It is generally supposed that the proprietors of operas are interested in having them made popular by widespread advertising; but if the doctrine contended for by the complainant is followed to its logical conclusion, the newspaper reporter and the literary and musical critic cannot make their observations public without subjecting the publishers of newspapers and periodicals to suits for infringement. If such "stories" as are involved in this action are prohibited, it will be exceedingly difficult to draw the line of demarcation between legitimate and illegitimate criticism. It is easy to imagine instances where the complainant's contention will make unlawful the published statement of the plot of a drama, the theme of a novel or the review of a history.

It might even lead to the ludicrous result of condemning as an infringer the writer who publishes a laudatory notice of a picture or a poem. The historian who describes the charge of the cuirassiers at Friedland will hardly expect to be sued by the owner of the copyright covering Meissonier's great painting—"1807." The editor who reports the departure of "the captains and the kings" and the dispersion of the navy after a Jubilee celebration will probably be astonished if accused of infringing "The Recessional."

It is said that the same rule should be applied to a copyright as to a patent for a machine. If this proposition be granted, it does not aid the complainant.

No one, for instance, infringes a claim for a machine unless he uses a similar machine operating in substantially the same manner and producing a like result by the same or equivalent means. A model of a machine incapable of producing any practical result does not infringe any more than the brief synopsis of an opera infringes the author's copyright. In the one case the property protected is the right to make, use and vend the machine, in the other it is the right to publish, reproduce in other forms and sell the opera. Neither the model of the machine nor the synopsis of the opera interferes with any of these rights.

If this case involved an *abridgment* as that word is ordinarily understood, I should be inclined to take a different view of this motion. The defendants' "story," however, is not such an abridgment. The abridgments which have been condemned by the courts involve colorable shortening of the original text, where immaterial incidents are omitted and voluminous dissertations are cut down, but where the characters, the plot, the language and the ideas of the author are pirated.

In the case at bar none of these wrongs has been committed. On the contrary, the advertising which the opera has received by thus calling the attention of the public to it cannot fail to have a beneficial effect upon the "market" of the owner of the copyright.

I have been unable to find an authority which goes to the extent

contended for by the complainant. The most favorable view for the complainant is that the question is involved in doubt and in such a case a preliminary injunction should not issue.

The motion is denied.