## CORCORAN v. MONTGOMERY WARD & CO., Inc., et al.

### No. 9665.

Circuit Court of Appeals, Ninth Circuit.

June 28, 1941.

Blase A. Bonpane, of Hollywood, Cal. (Louis E. Swarts [of Swarts & Tannenbaum], of Los Angeles, Cal., of counsel), for appellant.

Frederick Leuschner and Richard Harper Graham, both of Los Angeles, Cal., for appellee Montgomery Ward.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Appellant sued for infringement of copyright on a poem of which he is the author, alleging that without his consent appellee caused the poem to be set to music and is engaged in recording the end product on phonograph records and selling the records to the public. He appeals from a judgment dismissing his second amended complaint. The appeal presents the question whether the conduct alleged is an infringement of a right or rights protected by the Copyright Act. Act of March 4, 1909, c. 320, 35 Stat. 1075, 17 U.S.C.A. § 1 et seq.

By § 1(a) of the Act the copyright owner is given the exclusive right to "print, reprint, * * * copy, and vend" his work. It is first argued that appellant's work is actually embodied in the plastic material of the phonograph records, and that the sale of the records is a vending of the work no less than would be a sale of the poem in printed form. It is said that the work is pirated not alone when the thing

sold may be read but when it is intended for accoustical enjoyment.

■ If the question were one of first impression we might be inclined to agree with appellant; but his argument appears to be foreclosed by the decision in White-Smith Music Publishing Co. v. Apollo Co., 1908, 209 U.S. 1, 28 S.Ct. 319, 320, 52 L.Ed. 655, 14 Ann.Cas. 628. The question there presented was whether the making and selling of music rolls for use in player-pianos was an infringement of copyrights on sheet music within the terms of § 4952 of the Revised Statutes, granting the copyright owner the exclusive right of "printing, reprinting * * * copying * * * and vending" musical compositions. On the basis of its review of the authorities, both English and American, the court concluded that there was no infringement, observing that the "statute has not provided for the protection of the intellectual conception apart from the thing produced, however, meritorious such conception may be, but has provided for the making and filing of a tangible thing, against the publication and duplication of which it is the purpose of the statute to protect the composer." While it was recognized that this view made it possible for the manufacturer of the rolls to enjoy the use of the musical compositions without compensation to the copyright owner, the court observed that such considerations are not for the courts but for Congress.

In that case the court addressed itself to the matter of the "copying" of the work, but the question of "vending" was unmistakably present; and although the meaning of the latter term was not discussed we must assume that the view was entertained that the word "vending" did not of itself enlarge the scope of the copyright. We see no material difference between the wording of the statute there under consideration and the phraseology of the pertinent part of the present act.[1] In the 1909 revision Congress undertook to remedy certain deficiencies discovered in the former statute; but it is significant that in the respects we are now considering the provisions added relate only to musical compositions, 17 U.S.C.A. § 1(e), and dramatic works, 17 U.S.C.A. § 1(d). These changes were made in the light of the decision in the White-Smith Music Publishing Co. case, and they serve rather to emphasize the limited scope of subsection (a) as applied to the type of work now before us.

Appellant relies also on the provisions of subsection (b), giving the exclusive right "to translate the copyrighted work into other languages or dialects, or make any other version thereof, if it be a literary work; to dramatize it if it be a nondramatic work * * *." It is claimed that the recording with music constitutes the making of another "version" of the poem, and also amounts to a dramatization of it.

■ The precise meaning of the phrase "any other version" appears not to be settled by the decisions. The phrase has been held to apply to abridgements. G. Ricordi & Co. v. Mason, C.C., 201 F. 182; Id., D.C., 201 F. 184; Id., 2 Cir., 210 F. 277; Macmillan Co. v. King, 223 F. 862. It has been suggested that it refers to versions of a literary nature. Ladas, The International Protection of Literary and Artistic Property (1938) p. 779. However that may be, we think what was done here does not constitute the making of another version of the poem within the meaning of the statute. In the committee report referred to in the above note it was said that subsection (b) is "consistent with the existing law as construed by the courts." Something new would be imported into the law if appellant's position were to have judicial approval. White-Smith Music Publishing Co. v. Apollo, supra. And, if the phrase were to be construed so broadly as appellant claims it should be, the many provisions of the act dealing with particular versions would be rendered superfluous, as, for example, the provision in subsection (d) giving the proprietor of a dramatic work a monopoly of the right "to make or procure the making of any transcription or record thereof."

■ In his complaint, to which a copy of the poem was attached, appellant alleged that appellee made the record of the

[1] In reporting the bill for the present act the House Committee on Patents (report No. 2222, p. 4, 60th Congress, 2d session, Feb. 22, 1909) said: "Subsection (a) of section 1 adopts without change the phraseology of section 4952 of the Revised Statutes, and this, with the insertion of the word 'copy', practically adopts the phraseology of the first copyright act Congress ever passed—that of 1790 [1 Stat. 124]. Many amendments of this were suggested, but the committee felt that it was safer to retain without change the old phraseology which has so often been construed by the courts."

574

work "in the form of a drama, utilizing therein the characters, action, plot and dialogue contained in plaintiff's dramatic poem." But it is plain from the allegations as a whole that all appellee does is to reproduce the words of the poem in combination with music. The court properly held as a matter of law that this was not a dramatization of it.

Appellant further contends that the poem is a dramatic work and that under subsection (d) of section 1 he has the exclusive right "to vend any manuscript or any record whatsoever thereof; to make or to procure the making of any transcription or record thereof," etc. The poem was registered as a periodical contribution within the classification of "books", not as a "dramatic or dramatico-musical composition." Section 5 of the Act provides that the application for registration shall specify the class in which the claimed copyright belongs; and rule 33 of the Rules and Regulations of the copyright office contains a list of forms to be used when applying for registration. See 17 U.S.C.A. following § 53. In making his application appellant used a form entitled "Contribution to a newspaper or periodical." By rule 4 of the copyright rules the term "books", as used in the classification statute (§ 5), is defined as including "single poems, and the words of a song when printed and published without music."

■ Despite the provisions of section 5 to the effect that errors in classification shall not invalidate or impair the copyright protection, doubt may exist whether appellant is now permitted to say that his work belongs in a class other than that in which it was actually registered. He does not claim the classification was erroneous. See Ladas, supra, pp. 722, 723; DeWolf, An Outline of Copyright Law (1925), p. 227. Cf. Seltzer v. Sunbrock, D.C.Cal., 22 F. Supp. 621, 627. However, we need not inquire into that subject since we are satisfied that in any event the poem is not properly classifiable as a dramatic work. It is doggerel verse entitled "Plain Bull", con-

sisting of thirteen four-line stanzas descriptive of a cowboy's attempt to put his brand on a maverick bull, which, incidentally, proved to be by no means a counterpart of the gentle Ferdinand. While the poem has action in plenty, it lacks in the form in which it was written certain of the qualities of a dramatic work, notably dialogue and a perceptible plot.

The work is a narrative poem. Seltzer v. Sunbrock, supra; M. Witmark & Sons v. Pastime Amusement Co., D.C.S.C., 298 F. 470, 473, 474.[2] Undoubtedly it could be arranged and dramatized in the form of the animated cartoon so familiar to those who frequent motion picture houses. Most novels and stories and even some news articles may be dramatized but nobody thinks of them as dramatic works. The various forms of literary composition all have certain features in common, but if the similarities are pushed too far all attempt at classification breaks down and the copyright law is reduced to chaos. Compare Kreymborg v. Durante, D.C.N.Y., 21 U.S.P. Q. 557; 22 U.S.P.Q. 248.

Finally, appellant argues that his poem constitutes the lyric or words of a musical composition, and that it is entitled to the protection against the recording of "musical compositions" afforded by subsection (e) of § 1. However, the mere fact that appellant's work is adapted to be set to music does not make of it, in the form written, a musical composition.[3] Many prose compositions have been set to music.

Whatever may superficially appear to be the justice of appellant's claim, it is to be remembered that his case is governed entirely by the statute. And while in the 1909 revision of the Copyright Act composers were given the exclusive right of recording their copyrighted musical compositions and the like right was granted to authors of copyrighted dramatic works, Congress did not see fit to give like protection to copyrighted poems, stories or works of that nature.

Affirmed.

---

[2] Appellant relies on Green v. Luby, C. C., 177 F. 287 and Russell v. Smith, 1848, 12 Q.B. 217. The first is readily distinguishable. The Russell case is said to have been somewhat discredited by Fuller v. Blackpool Winter Gardens, 1895, 2 Q. B. 429. See Copinger, Law of Copyrights, 7th Ed., p. 62.

[3] As already pointed out, rule 4 of the

Rules and Regulations of the copyright office states that the term "books" includes "single poems, and the words of a song when printed and published without music." And rule 10, relating to musical compositions states conversely that "the words of a song printed alone should be registered as a 'book,' not as a 'musical composition.'"