TOHO CO., LTD., Plaintiff,

v.

WILLIAM MORROW AND COMPANY, INC., Defendant.

No. CV 98–0925 DT (VAPx).

United States District Court, C.D. California.

April 6, 1998.

Charles N. Shephard, Sheri E. Porath, Greenberg Glusker Fields Claman & Machtinger LLP, Los Angeles, CA, for Toho Co., Ltd.

Bradley H. Ellis, Stephen G. Contopulos, Steven A. Ellis, Sidley & Austin, Los Angeles, CA, for William Morrow & Company Inc.

## ORDER **GRANTING** PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

TEVRIZIAN, District Judge.

### Background

Plaintiff Toho Co., Ltd. ("Toho" or "Plaintiff") brings this action against Defendant

William Morrow and Company, Inc. ("Morrow" or "Defendant") alleging various causes of action for alleged infringement of Toho's intellectual property rights in the fictional character "Godzilla," and subsequent derivative works based thereon.

Toho is a Japanese corporation and motion picture studio with its principal place of business in Tokyo, Japan. *Complaint*, ¶ 2. William Morrow is alleged to be a New York corporation with its principal place of business in New York. *Id.*, ¶ 3.

In or about 1954, Toho alleges that it created the fictional character "Godzilla", a giant prehistoric monster brought to life in the modern world. *Id.*, ¶ 5. At the same time, Toho produced and distributed a feature-length motion picture entitled *Godzilla*, based upon the reawakening of Godzilla by the detonation of an atomic bomb. The film was allegedly released in the United States in or about 1956 under the title *Godzilla, King of the Monsters. Id.* Toho alleges that it has subsequently produced and distributed throughout the world a series of motion pictures based upon the further adventures of Godzilla, including such purported "classics" as *Godzilla vs. Mothra*, and *Son of Godzilla. Id.* Toho contends that it is the owner of the exclusive rights and privileges in and to the copyright in its original motion picture *Godzilla* and in the subsequent Godzilla motion pictures. *Id.*, ¶ 6.

Toho alleges that as a result of its success and popularity, it has continuously engaged in the business of merchandising the Godzilla character. *Id.*, ¶ 8. Toho alleges that it licenses others to use the name and likeness of Godzilla on and in the connection with toys, clothing, books, games, records, posters and various other types of merchandise. *Id.*

Beginning in about 1981, Toho alleges that it duly registered the name "Godzilla" as a service mark and trademark under the Lanham Act, 15 U.S.C. § 1051, and that Toho remains to this date the owner of said trademark and service mark. *Id.*, ¶ 9.

On May 20, 1998, Toho contends that Tri-Star pictures plans to release a big-budget style motion picture featuring the Godzilla character. The motion picture is entitled *Godzilla* and is being produced with Toho's permission. Toho avers that in connection with the impending release of the Godzilla motion picture, Toho and its authorized merchandising agent are engaged in an extensive licensing and merchandising campaign. *Id.*, 12. Among the licensees are Random House, Inc. ("Random House"), who was allegedly granted the exclusive right to publish a wide variety of books concerning Godzilla, including compendium books. *Id.*, ¶ 13. Pursuant to this license, Toho alleges that Random House is publishing a compendium book of Toho's Godzilla films entitled "The Official Godzilla Compendium" (hereinafter the "Random House Book"). *Id.*, ¶ 14.

Toho alleges that Morrow is currently advertising and publishing, and plans to make available to the public beginning on April 1, 1998, a 227–page Godzilla compendium book entitled "Godzilla!" (hereinafter the "Morrow Book"). *Id.*, ¶ 15. Toho contends that the cover of the Morrow Book features an illustration of Toho's copyrighted Godzilla character, and the title is written in the distinctive lettering style used by Toho and its licensees in their merchandising activities. *Id.* Toho asserts that the Morrow Book will contain more than ninety (90) photographs from or concerning Toho's copyrighted films, and that several of these photographs will comprise full pages in said Book. *Id.* Toho alleges that Morrow's unauthorized Book is substantially similar to the Toho authorized Random House Book. *Id.*, ¶ 16

Toho contends that neither Morrow nor the author of the Morrow Book ever sought or obtained permission from Toho to write, publish, or distribute the Morrow Book. *Id.*, ¶ 17. Because of Morrow's alleged failure to cease and desist from its unauthorized publication and planned distribution of the Morrow Book, the instant lawsuit was commenced. *Id.*

### Procedural History

On February 6, 1998, Toho filed its Complaint alleging causes of action for:

(1) Violation of the Lanham Act, Section 43(a);

(2) Statutory Trademark Infringement;

(3) Common Law Trademark Infringement;

(4) Violation of Federal Anti–Dilution Law, 15 U.S.C. § 1125(c);

(5) Injunction for Violation of California's Anti–Dilution Law, California Business and Professions Code § 14330;

(6) Common Law Unfair Competition;

(7) Unjust Enrichment;

(8) Copyright Infringement;

(9) Injunctive Relief; and

(10) Injunction and Restitution under California Unfair Competition Statute, California Business and Professions Code § 17200.

On February 27, 1998, Toho filed a Motion for Preliminary Injunction, which is before this Court today.

## Discussion

### A. Standard

To prevail on a motion for preliminary injunction, the plaintiff is required to show that it will suffer irreparable injury and that it is likely to prevail on the merits, or serious questions regarding the merits exist and the balance of hardships tips sharply in Plaintiff's favor. *Chalk v. U.S. District Court*, 840 F.2d 701, 704 (9th Cir.1988); *California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1455 (9th Cir.1985). A showing of a reasonable likelihood of success on the merits raises a presumption of irreparable harm. *Apple Computer, Inc. v. Formula International Inc.*, 725 F.2d 521, 525 (9th Cir.1984), citing *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3d Cir.1983), *cert. dismissed*, 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984). A showing of harm varies inversely with the required showing of meritoriousness. *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir.1987). In patent infringement cases, a strong showing of likelihood on the merits coupled with continuing infringement raises a presumption of irreparable harm to the patentee. *Reebok Int'l, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed.Cir. 1994); *see Eli Lilly & Co. v. American Cyanamid Co.*, 82 F.3d 1568, 1578 (Fed.Cir. 1996)—no presumption without strong showing of infringement.

### B. Analysis

#### 1. Toho Has Demonstrated a Likelihood of Success on the Merits of Its Trademark Claim.

Toho has brought trademark and unfair competition claims against Morrow under 15 U.S.C. § 1114(a) and 1125(a). When trademark and unfair competition claims are based on the same infringing conduct, courts apply the same analysis to both claims. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1288 n. 2 (9th Cir.1992). To succeed on a claim for trademark infringement or unfair competition, the moving party must establish:

(1) ownership of the trademark at issue;

(2) use by defendant, without authorization, of a copy, reproduction, counterfeit or colorable imitation of the moving party's mark in connection with the sale, distribution or advertising of goods or services; and

(3) that defendant's use of the mark is likely to cause confusion, or to cause mistake or to deceive.

15 U.S.C. § 1114(a); *Gallo*, 967 F.2d at 1288 n. 2. The Court notes also that for preliminary injunctive relief, the Court need only find a probability that necessary facts will be established, not that such facts actually exist. *Sierra On–Line, Inc. v. Phoenix Software*, 739 F.2d 1415, 1423 (9th Cir.1984).

#### a. Nominative Fair Use by Defendant.

Defendant asserts that its use of the Godzilla trademark is protected by the nominative fair use defense. In *New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302 (9th Cir.1992), the Ninth Circuit laid out a three part test for determining whether a use will qualify for the non-statutory "nominative fair use defense." The *New Kids* case involved the use of plaintiff's trademark by two newspapers to conduct popularity polls between members of the "rock" group "New Kids on the Block." Because the defendant newspapers only used the trademark to describe the plaintiffs, the court acknowledged it as such remarking, "this is not the classic fair use case where the defendant has used plaintiff's mark to de-

scribe the defendant's own product." *Id.* at 308. If the Defendant's use of the plaintiff's trademark refers to something other than the plaintiff's product, the traditional fair use inquiry governs. But where the defendant uses a trademark to describe the plaintiff's product, the Ninth Circuit has held that the defendant is entitled to a nominative fair use defense provided it meets the three requirements. *Id.* Like the *New Kids* case, because Morrow is alleged to be using Toho's trademark to describe Godzilla [him/her/it]self, this appears to be a case "involving a nontrademark use of a mark—a use to which the infringement laws simply do not apply." *New Kids,* 971 F.2d at 307. Therefore, to be entitled to the non-statutory nominative fair use defense, Defendant must satisfy the three part test:

> First, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *New Kids on the Block v. News America Publishing Inc.,* 971 F.2d 302 (9th Cir.1992).

■ Plaintiff initially argues that nominative fair use only applies if the trademark is used to describe the goods or services of a party. *New Kids,* 971 F.2d at 306. "Fair use" defense to trademark infringement claim is available only in actions involving descriptive trademarks. *Cullman Ventures, Inc. v. Columbian Art Works, Inc.,* 717 F.Supp. 96, 13 U.S.P.Q.2d 1257, (S.D.N.Y. 1989). *See also Engineered Mechanical Services, Inc. v. Applied Mechanical Technology, Inc.,* 584 F.Supp. 1149, 223 U.S.P.Q. 324 (M.D.La.1984) (court held that alleged infringers of trademark "metalock" could not assert fair use defense, where mark was suggestive and not descriptive.); *CNA Financial Corp. v. Local 743 of Intern. Broth. Teamsters,* 515 F.Supp. 942, 214 U.S.P.Q. 49 (N.D.Ill.1981) (in order to establish fair use defense, union and others had to show they used employer's mark as a "generically descriptive term.") The aforementioned cases however are all inapposite in that they all involve the use by defendants of plaintiffs' trademarks to describe the formers' products. As discussed *supra,* because Morrow is using Toho's trademark to describe Toho's product, it need not be descriptive. Therefore, Toho's argument that section 1115(b)(4)'s fair use defense is only available to descriptive trademarks, is misplaced.

Turning to the requirements of the three part test, this Court finds that the first prong of the test is satisfied. The product (the Godzilla character) is one not readily identifiable without the use of the trademark. A "giant sized pre-historic dragon-like monsters" may be an adequate description of Plaintiff's product, but use of the "Godzilla" mark is required to readily identify Plaintiff's product. The second prong, "only so much of the mark or marks may be used as is reasonably necessary to identify the product or service," appears to derive from a concern that confusion as to affiliation may result if the defendant's use of the plaintiff's mark exceeds its legitimate referential purpose. The cover of the Morrow Book contains Toho's trademark in bold orange lettering prominently displayed. This prong of the test does not appear to be satisfied because Morrow's use exceeds its legitimate referential purpose.

The third prong of test, "the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder," essentially goes to consumer confusion as to the source of Toho's mark, as well as the actions and intent of Morrow in utilizing the mark. The issue thus becomes whether "a reasonable consumer of average intelligence and experience would be confused as to the source" of the product. *New West Corp. v. NYM Co.,* 595 F.2d 1194 (9th Cir.1979). The Ninth Circuit has established a multi-factored test to make this determination, including a commonly-used eight-factor set forth in *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir.1979). This Court notes that this test is merely "a non-exclusive series of factors," not " hoops that a district court need jump through to make the determination." *Eclipse Assoc. Ltd. v. Data General Corp.,* 894 F.2d 1114, 1118 (9th Cir.1990). However, before this Court undertakes an analysis of the *Sleek-*

*craft* factors, Morrow's First Amendment and Disclaimers defenses must be addressed.

### i. Morrow's First Amendment Defense is Unavailing.

■ Morrow contends that there is a significant First Amendment interest associated with choosing an appropriate title for a book or other work. *E.g. Rogers v. Grimaldi*, 875 F.2d 994, 998–99 (2d Cir.1989). Morrow contends that the Lanham Act does not apply "unless [1] the title has no artistic relevance to the underlying work whatsoever, or, [2] if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work." *Id.* at 999. The Second Circuit added however that, "this limiting construction would not apply to misleading titles that are confusingly similar to other titles. The public interest in sparing consumers this type of confusion outweighs the *slight* public interest in permitting authors to use such titles." *Id.* at 999, n. 5 (emphasis added) Furthermore the court noted that the Lanham Act should be construed to apply to "artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression." *Id.* In this case, because the Morrow Book's title does indeed have some artistic relevance to the underlying work, the Lanham Act will only apply if the title unreasonably creates confusion as to the source of the work. With regards to the second test, "the finding of likelihood of confusion must be particularly compelling to outweigh the First Amendment interest" of the defendant. *Twin Peaks*, 996 F.2d at 1379. For reasons stated *infra*,[1] the likelihood of confusion in this action is strong, and therefore Morrow's First Amendment defense is unavailing.

### ii. Morrow's Disclaimers Are Ineffective.

Prior to an analysis of the *Sleekcraft* factors, this Court must also decide the issue of the effectiveness of Morrow's disclaimers. If a court determines that a disclaimer is adequate to alleviate potential confusion, that ends the inquiry; there is no need to proceed through the multi-factor *Sleekcraft* test.

*Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719, 723–26 (9th Cir.1985). With regards to the disclaimer, Morrow argues that it has included prominent disclaimers on both the front and back covers of the Morrow Book. On the front cover, the word "UNAUTHORIZED" appears at the very top of the page, in relatively small lettering, surrounded by an orange bordering. Morrow Exhibit 1. On the *back* cover the following disclaimer appears,[2] highlighted by its appearance against a blue background: "THIS BOOK WAS NOT PREPARED, APPROVED, LICENSED OR ENDORSED BY ANY ENTITY INVOLVED IN CREATING OR PRODUCING ANY GODZILLA MOVIE, INCLUDING COLUMBIA/TRISTAR AND TOHO CO. LTD." *Id.*

Morrow initially argues that the Second Circuit has held that "[d]isclaimers are a favored way of alleviating consumer confusion as to source or sponsorship." *Consumers Union v. General Signal Corp.*, 724 F.2d 1044 (2d Cir.1983). However, in *Home Box Office, Inc. v. Showtime/The Movie Channel Inc.*, 832 F.2d 1311 (2d Cir.1987), the Second Circuit explicitly rejected that claim, holding that the infringer has an affirmative duty to come forward with "evidence sufficient to demonstrate that any proposed material would significantly reduce the likelihood of consumer confusion." *Id.* at 1316. Moreover, the Second Circuit has also recognized a growing body of academic literature that suggests that disclaimers are generally ineffective. *See e.g.* Jacoby & Raskoff, *Disclaimers as a Remedy for Trademark Infringement Litigation: More Trouble Than They Are Worth?*, 76 Trademark Rept. 35, 54 (1986). *See also* Radin, *Disclaimers as A Remedy for Trademark Infringement: Inadequacies and Alternatives*, 76 Trademark Rept. 59 (1986).

In the present case, Morrow contends that its disclaimers on the front and back covers negate any potential for confusion. Plaintiff contends that the disclaimers are totally ineffective. Toho argues that the placement of

---

**1.** See Court's analysis of the *Sleekcraft* factors for likelihood of confusion in part 1(a)(iii) below.

**2.** Morrow contends that this disclaimer catches the eye of the consumer because it appears in all

capital letters. This is a distinction without significance because all of the words on the back cover are in capital letters.

the word "UNAUTHORIZED" at the extreme top edge of the cover would not alert consumers, considering that its lettering size is small relative to the title.[3] Toho also asserts that a disclaimer that is not in close proximity to the use of the infringing mark is generally considered ineffective. *See Adray v. Adry–Mart, Inc.*, 76 F.3d 984, 991 n. 7 (9th Cir.1995).

 This Court finds that the disclaimers do not alleviate the potential for consumer confusion. The word "UNAUTHORIZED" on the front cover only conveys a limited amount of information. It is not necessarily clear that alerting the average consumer to the word "UNAUTHORIZED" would negate consumer confusion as to Toho's sponsorship or endorsement of the Morrow Book. As the court in *Twin Peaks Productions v. Publications Intern.*, 996 F.2d 1366, 1379 (2nd Cir. 1993) stated, the disclaimer would have been far more effective had it simply stated "that the publication has not been prepared, approved, or licensed by any entity that created or produced the" original Toho Godzilla films. That this information is conveyed on the back cover does not suffice. This Court is of the belief that most consumers look primarily at the front cover of a book prior to purchase. Moreover, the color of the disclaimer on the front cover does not effectively draw the attention of the average consumer as its bordering is in the same shade as the title. Further, the word is placed at the top of the page where most consumers' eyes are not likely to dwell. Perhaps if the information contained on the back cover were placed on the front cover, consumer confusion could be negated. The disclaimer is also not placed on the spine of the Morrow Book, a place where many consumers are likely to view before seeing the cover. Toho also asserts that the advertisement for the Morrow Book placed on the Internet at sites such as "Amazon.com" does not even contain the disclaimer. In summary, this Court finds that the disclaimers are ineffective.

*iii. The Sleekcraft Factors Favor Toho.*

 Turning to the Ninth Circuit's multi-factor test to determine whether "likelihood of confusion" exists in a given case, the factors to be considered include:

(a) strength of the mark;

(b) proximity or relatedness of the goods;

(c) similarity of appearance, sound, and meaning of the marks;

(d) evidence of factual confusion;

(e) degree to which the marketing channels converge;

(f) type of goods and degree of care consumers are likely to exercise in purchasing them;

(g) intent of defendant in selecting the allegedly infringing mark; and

(h) likelihood that the parties will expand their product lines.

*Sleekcraft*, 599 F.2d at 348. The factors are intended only as a guide; the presence or absence of any particular factor does not mandate or preclude a finding of likelihood of confusion. *Gallo*, 967 F.2d at 1290–91.

### a. Strength of the Mark

 To determine the validity of the service mark, a court will look to its strength. The strength of a mark and the degree of protection to which it is entitled are evaluated under the "distinctiveness" framework. Two tests are commonly used to measure the strength of a mark, the "imagination" test and the "need test." The "imagination test" focuses on the amount of imagination required in order for a consumer to associate a given mark with the goods or services it identifies. If a consumer must use more than a small a amount of imagination to make the association, the mark is suggestive and not descriptive. *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1218 (9th Cir.1987). The "need test" focuses on the extent to which a mark is actually needed by competitors to identify their goods or services. The two tests are related, because "[t]he more imagination that is required to associate a mark with a product [or service], the less likely the words used will be needed by competitors to describe their products [or services]." *Union Carbide Corp. v. Ever-*

---

**3.** Toho also argues that even if a consumer were to see the disclaimer on the front cover, it is unclear what it means. Toho contends that it is certainly not a clear statement that Toho is unaffiliated with the Morrow Book.

*Ready, Inc.*, 531 F.2d 366, 379 (7th Cir.), *cert. denied* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). In the present case, Morrow argues that the word Godzilla is actually a hybrid of the Japanese words for gorilla and whale, and therefore the mark is merely descriptive. This Court disagrees. While the word "Godzilla" may be a hybrid, this Court nonetheless finds it to be a fanciful, arbitrary word used to describe a fire-breathing, pre-historic, often-schizophrenic dinosaur. This Court finds that the mark is very strong as it requires a large amount of imagination to associate the mark "Godzilla" with the character it represents. This factor therefore weighs in favor of Toho.

### b. Proximity of the Goods

Morrow contends that the two books are not related. Morrow argues that its Book is an adult-oriented book that is directed to baby-boomers who first saw the Godzilla movies as children in the 1960s and 1970s. Morrow contends that the Toho Book is a children's book akin to the "Berenstein Bears". This Court finds this argument implausible. Both Books contain numerous pictures, detailed plot summaries and other tidbits of information. While the Morrow Book may also have some irreverent satire, both Books are seeking to capitalize on the Godzilla marketing blitz that always accompanies a blockbuster film. This factor weighs for Toho.

### c. Similarity of the Marks

This factor clearly weighs for Toho as the marks are identical. Morrow's Book utilizes the trademark "Godzilla" in bold letters prominently displayed in bright orange lettering on its front cover.

### d. Evidence of Actual Confusion

At this point, Toho admits that it has not commissioned any poll to determine likelihood of confusion. Although not dispositive, this factor weighs for Morrow.

### e. Marketing Channels Used

Because this Court has found that the products are the same, likewise the marketing channels are identical. Both parties utilize bookstores and internet marketing to sell the Books. This factor weighs for Toho.

### f. Type of Goods and Consumer Care in Purchasing

The less care consumers take in purchasing a product, the greater the likelihood that similar marks will confuse consumers as to the source or sponsorship of the product. *Sleekcraft*, 599 F.2d at 353. Morrow argues that it is widely understood in the book publishing industry that book purchasers generally read the front and back covers before deciding on a purchase. Because the disclaimers appear on the front and back covers, Morrow contends that this factor militates for Morrow. Toho argues that the Ninth Circuit has recognized that consumers do not exercise care when purchasing relatively low cost items. *Id.* Pursuant to this, Toho contends that if a movie related book hits the fancy of consumer, most consumers will not exercise great care because of the low price of the Book ($16.00). Because this Court has already found the disclaimer to be ineffective, along with the relatively low cost of purchase, this Court believes that many consumers will simply buy the Book with the most attractive cover. This factor therefore favors Toho.

### g. Defendant's Intent

This Court finds this factor militates toward Toho. While the Morrow Book includes disclaimers and contains often critical commentary of the films (which suggests an intent to distance itself from Toho), the cover of the Morrow book could arguably have been intended to resemble the lettering utilized by Toho's other licensees. What concerns the Court with respect to this factor is the release of the Morrow Book, i.e. April 1, 1998, with the timing of the release of the movie, i.e. May 20, 1998. Accordingly, this factor weighs in favor of Toho.

### The Sleekcraft Factors Favor Toho

The multi-factors tests in trademark cases are not to be treated as a scorecard, with the prevailing party being determined by which side "wins" on more of the factors. *Rodeo*, 812 F.2d at 1220. However, this Court finds that the likelihood of confusion is strong. The products are identical, the disclaimers are ineffective, the Godzilla trademark is strong, the similarity of the marks is strong, and the marketing channels are identical. The aforementioned reasons compel this Court to find

that consumer confusion is likely. Therefore, it appears that Morrow is not entitled to rely on the non-statutory nominative fair use defense.

### b. Conclusion

Toho avers that its ownership of a valid trademark in the name "Godzilla" is not in dispute. Toho has also attached copies of the registration certificates from the United States Patent and Trademark Office, arguing that certificates are prima facie evidence of mark ownership and validity. Ina Decl., Exhibit "B". It is also clear to this Court that Morrow has impermissibly used Toho's trademark "Godzilla" in connection with the sale of its Book. Toho has also shown a likelihood of confusion as to sponsorship of the Morrow Book. Toho is therefore likely to prevail on the merits of its trademark infringement and unfair competition claims. A showing of a reasonable likelihood of success on the merits raises a presumption of irreparable harm. *Apple Computer, Inc. v. Formula International Inc.*, 725 F.2d 521, 525 (9th Cir.1984), citing *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3d Cir.1983), *cert. dismissed*, 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984). Accordingly, on this basis alone, Toho's motion for preliminary injunction is **granted.**

### 2. Toho Has Demonstrated That it is Likely to Prevail on the Merits of its Copyright Claim.

■■■ To prove its copyright claims, Toho must present evidence of two basic elements—that it owns the copyright in the works at issue and that Morrow copied from those works in such a manner to fall outside fair use. *Baxter v. MCA, Inc.*, 812 F.2d 421 (9th Cir.1987).

### A. Toho Owns Copyrights in the Films, the Character Godzilla, and Still Pictures of Scenes from Films.

### (1) Toho has Demonstrated Prima Facie Ownership to Copyrights in the Films.

Morrow contends that Toho is incapable of proving copyright ownership of the films at issue in this action. This Court finds otherwise. The record is replete with registrations from the United States Copyright Office for the films at issue. Attached as exhibits to the Declaration of Masaharu Ina, are copyright registrations belonging to Toho including such films as: (1) All Monsters Attack; (2) Godzilla vs. Mecha-Godzilla II; (3) Godzilla vs. Destroyer; (4) Godzilla vs. Mothra; (5) Godzilla vs. Space Monster; (6) Godzilla vs. Mecha-Godzilla; (7) Godzilla vs. Megalon;[4] (8) Godzilla Versus the Sea Monster; (9) Godzilla vs. King Chidorah; (10) Godzilla vs. The Thing; and others.

The declaration from Mr. Ina also states that various images from the Morrow Book are taken directly from Toho's copyrighted films. Mr. Ina states for example, "the image which appears at the bottom of page 135 of the [Morrow] Book is a scene from Toho's copyrighted film "Godzilla vs. Megalon."" Ina Decl. 11:17–19. The evidence goes on to demonstrate that the Morrow Book uses scenes directly from Toho's copyrighted films to illustrate the Book. This Court finds that Toho has demonstrated prima facie ownership to copyrights in the films alleged to be used in the Morrow Book.

### (2) Toho Has a Valid Copyright in the Godzilla Character.

■■ Morrow argues that the Godzilla character is not delineated enough to merit copyright protection. Only those characters that are highly delineated with constant traits qualify for protection separate from the works in which they appear. *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir.1930) ("[T]he less developed the characters the less they can be copyrighted, that is the penalty an author must bear for marking them too indistinctly.") *Olson v. National Broadcasting Co., Inc.*, 855 F.2d 1446, 1451–53 (9th Cir.1988). Morrow contends that because the Godzilla character has assumed many shapes and personalities over the course of the films, it has no constant traits and therefore cannot acquire copyright

---

4. Toho has also included an assignment of the rights in "Godzilla vs. Mecha-Godzilla", "Godzilla vs. Megalon", and "Terror of Mecha-Godzilla" from Toho Eizo Co., Ltd. to Toho Co., Ltd. dated December 31, 1985.

protection apart from the film in which it appears.

Toho contends that where a character is visually depicted, and contains the requisite attributes of originality, a character is sufficiently delineated to receive copyright protection. *Walt Disney Productions v. Air Pirates,* 581 F.2d 751, 755 (9th Cir.1978). Moreover, Toho argues that *Metro–Goldwyn–Mayer v. American Honda Motor,* 900 F.Supp. 1287 (C.D.Cal.1995) is instructive. In that case, the court held that the James Bond character was protected by copyright, even though the character had changed "from year to year and film to film." *Id.* at 1296–97. The court further held that the James Bond character was copyrightable because of an identifiable set of traits that had developed over the course of the 16 James Bond films. *Id.* at 1296. In this case, Godzilla has likewise developed a constant set of traits that distinguish him/her/it from other fictional characters. While Godzilla may have shifted from evil to good, there remains an underlying set of attributes that remain in every film. Godzilla is always a pre-historic, fire-breathing, gigantic dinosaur alive and well in the modern world. This Court finds that Toho's Godzilla is a well-defined character with highly delineated consistent traits. Therefore, Toho has demonstrated prima facie ownership of copyrights in the Godzilla character apart from any film.

*(3) Toho Appears to Retain Copyrights in the Photographs Used in the Morrow Book.*

 Morrow contends that none of the illustrations in the Morrow Book are taken from any of the films. Instead, Morrow contends that they are either publicity stills, photographs taken by people on the set of a movie, photographs taken by the author, or movie posters. Morrow argues that if a published photograph before 1989, when the U.S. joined the Berne Convention, is distributed without copyright notice, the consequence is that it falls into the public domain and cannot be protected by anyone.

Toho argues convincingly that the Copyright Restoration Act restores any works inadvertently injected into the public domain. 17 U.S.C. § 104A. The Act provides that where foreign works may have fallen into the public domain in the United States because

of their failure to comply with U.S. statutory formalities (such as publication without notice), the copyright is automatically restored as of January 1, 1996. Therefore, accepting as true that the photographs in the Morrow Book are publicity stills, Toho would still retain copyrights in them for any failure to affix a copyright notice.

**B. *Morrow's Book Cannot Be Considered Fair Use of Toho's Copyrights.***

The copyright fair use doctrine is codified in 17 U.S.C. § 107, which provides in pertinent part, as follows:

"[T]he fair use of a copyrighted work ... for purposes of criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research is not an infringement of copyright."

The Supreme Court has required a case-by-case analysis of fair use to be guided by the factors enumerated in 17 U.S.C. § 107:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107.

*I. The Purpose and Character of the Use.*

 Toho contends that under this factor courts traditionally examine the commerciality of the infringing work. If an infringing work is created for commercial purposes, as opposed to nonprofit purposes, this factor "tends to weigh against a finding of fair use." *Campbell v. Acuff–Rose Music, Inc.,* 510 U.S. 569, 585, 114 S.Ct. 1164, 127 L.Ed.2d 500, 519. "The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row, Publishers v. Nation Enterprises,* 471 U.S. 539, 562, 105 S.Ct. 2218, 85 L.Ed.2d 588, 608. Morrow

argues that the proper consideration is to what extent does the work "transform" or "add something new, with a further purpose or different character, altering the first with new expression, meaning or message." *Campbell*, 510 U.S. at 579, 114 S.Ct. 1164. Morrow contends that because its Book adds numerous biographies, analyses of the movies, including commentary, trivia and other bits of information it "transforms" the copyrighted work.

Upon review of Morrow's Book, it appears that it does indeed contain commentary, critique, and trivia. However, the Morrow Book also contains extensive detailed plot summaries of each Godzilla film. Moreover, the numerous pictures from Toho's films do not transform anything, they are merely aesthetically pleasing to the reader. If the Morrow Book was dominated by commentary and critique, than it would most likely fall into the realm of fair use. However, because of the purely commercial nature of the Morrow Book and the detailed plot summaries (which consists of Toho's copyrighted material), this Court finds that the first factor weighs heavily in favor of Toho.

## II. The Nature of the Copyrighted Work.

Because the copyrighted material is a work of fiction, Morrow concedes that this factor favors Toho.

## III. The Amount and Substantiality of the Use.

This factor asks what amount was taken from the copyrighted work. For each Godzilla film, the Morrow Book includes a detailed plot summary, as well as a commentary. The plot summaries are usually about two times the length of each commentary. Morrow contends that the Morrow Book contains summaries that can be described as "vague, fragmentary and superficial." *G. Ricordi & Co. v. Mason*, 201 F. 182, *aff'd* 210 F. 277 (2d Cir.1913). Morrow also contends that the Book only contains that which was necessary to inform the commentary and the other facts set forth therein. Toho argues that the Morrow Book contains highly detailed plot summaries that can hardly be describes as "vague, fragmentary, and superficial." This Court agrees. For example, the Morrow Book's introduction to "Godzilla vs. Hedora" (the Smog Monster) begins with:

"In Suruga Bay, a monster's evil brow barely rises above industrial sludge. At a Japanese cabaret, a lounge singer warbles an eco-song about animals and flowers going away and smog choking us; for the slower ones among us, she's intercut with shots of polluted, trash-filled water." Morrow Book, p. 120

This is a far cry from vague and fragmentary. This description conjures up vivid images that cannot be considered necessary for a critical commentary. Most, if not all of the films critiqued in the Morrow Book contain pages and pages of plot summary. This Court finds this to be outside the bounds of fair use. Morrow has crossed the line to the point where they are exploiting Toho's copyrighted material without paying the customary price. This factor weighs in favor of Toho.

## IV. Effect of the Use on the Potential Market.

The final factor assesses "the extent of market harm caused by the particular actions of the alleged infringer" and "whether unrestricted and widespread conduct of the sort engaged in by the defendant ... would result in substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590, 114 S.Ct. 1164. Morrow argues that where the defendant's work is a commentary and criticism of plaintiff's work, this factor should favor the defendant. Implicit in this argument is that the Morrow Book is essentially a critique of Toho's copyrighted work, and therefore there is no protectible market for criticism.

Toho contends initially that the Morrow Book contains detailed plot summaries, as well as the cover illustration of Godzilla, and images from various Godzilla films. On this basis alone, this Court agrees that the effect on the potential market would be adverse to Toho. To be sure, many consumers will purchase a Godzilla compendium solely to get reacquainted with the improbable story lines that made Godzilla films so eccentric. Because Morrow's Book and the Random House Book are attempting to capitalize on this market, there would be an adverse effect on the potential market for Toho. Due to the

strong similarity between the two Books, the conclusion is inescapable that the Morrow Book will affect the potential market for Toho's Book.[5]

### C. Toho Has Demonstrated that Irreparable Harm Will Result if the Injunction is Not Granted.

 Morrow urges this Court to refrain from issuing the injunction because Morrow is a financially solvent company that will be able to satisfy any money judgment that could possibly be entered against it in this case. Toho argues however that in *Cadence Design Systems v. Avant! Corporation*, 125 F.3d 824, 827 (9th Cir.1997), the Ninth Circuit expressly rejected the position advanced by Morrow when it stated, "[A] defendant cannot, by asserting the adequacy of money damages, rebut the presumption of irreparable harm that flows from a showing of likelihood of success on the merits of a copyright infringement claim." *Cadence Design*, 125 F.3d at 827. Because Toho has made a strong showing of its likelihood of success on the merits of its copyright and trademark claims, and because Morrow cannot adequately rebut the presumption of irreparable harm, a preliminary injunction is warranted. A showing of harm varies inversely with the required showing of meritoriousness. *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir.1987). In this case, Toho's strong showing mandates a low showing of irreparable harm.

### D. Conclusion

 This Court finds that Toho has made a prima facie case for ownership of the copyrights at issue in this action, including copyrights in the Godzilla films, the Godzilla character apart from any film, and the scenes from Godzilla films. This Court also finds that Morrow will not likely prevail on its fair use defense. Therefore, Toho has made a strong showing of likelihood of success on the merits. This raises a presumption of irreparable harm. *Apple Computer, Inc. v. Formula International Inc.*, 725 F.2d 521, 525 (9th Cir.1984), citing *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3d Cir.1983), *cert. dismissed*, 464 U.S.

1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984). It must be noted that findings of fact and conclusions of law made in connection with this preliminary injunction are not binding adjudications. This Court may come to opposite conclusions at the trial on the merits. *University of Texas v. Camenisch*, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). Therefore, Toho's motion for preliminary injunction is **granted.**

Plaintiff to post a bond in the sum of $25,000.00 on or before April 13, 1998 at 3:00 p.m.

IT IS SO ORDERED.

---

5. It need not be explained that a consumer who purchases one Godzilla compendium book is not